UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

UNITED SPINAL ASSOCIATION, a
nonprofit organization, DISABLED IN
ACTION, a nonprofit organization,

                                Plaintiffs,

                    -against-

BOARD OF ELECTIONS IN THE CITY
OF NEW YORK and JULIE DENT, in her
official capacity as President of the Board of
Elections in the City of New York,

                            Defendants.

------------------------------------------------------ x

Case no. 10-cv-5653 (DAB)

[PROPOSED] MODIFIED ORDER

## MODIFIED ORDER

      On March 16, 2012, Plaintiffs United Spinal Association and Disabled In Action (collectively, "Plaintiffs"} and Defendants Board of Elections in the City of New York ("BOE"} and Julie Dent, in her official capacity as President of the BOE (collectively, "Defendants"}, filed Motions for Summary Judgment in the above-referenced matter. On August 8, 2012, this Court entered a Memorandum and Order (the "August 8th Order"}, which granted Plaintiffs' Motion and denied Defendants' Motion. Since its issuance of the August 8th Order, the Court has held three hearings focused solely on the question of appropriate remedy. By letter dated October 11, 2012, the Department of Justice, pursuant to 28 U.S.C. § 517, appeared and submitted a proposed

Order for a remedial plan.  Plaintiffs and Defendants
(collectively, "parties"), and the Department of Justice, were
instructed to meet and confer to develop and propose a joint plan
for the Court to consider before it entered a remedial Order in
this matter.  Having considered the parties' proposals and
concerns, the Court hereby ORDERS that:

1. Accessible polling sites are and shall be the cornerstone
of the voting accessibility program of the BOE.  The BOE has an
obligation to provide an accessible voting program under federal
law.

2. The BOE shall maintain in operable working condition, on
the day of any election, those features of facilities and
equipment that are required to be provided by the BOE to make
polling sites temporarily accessible to and usable by persons
with disabilities.

3. Beginning with the November 6, 2012 General Election, and
in all primary, special, and general elections held thereafter,
the BOE shall designate one of the BOE's existing poll-site
workers at every polling site in New York City as the on-site
Americans with Disabilities Act Coordinator on Election Day ("On-
Site Accessibility Coordinator").  The BOE shall contract with
the Center for the Independence of the Disabled, New York
("CIDNY"), the downstate regional Protection and Advocacy for

2

Voter Access office, to train each of the On-Site Accessibility Coordinators on poll-site accessibility prior to the November 6, 2012 General Election. After the November 6, 2012 General Election, the BOE may contract with a third-party, mutually agreed upon by the parties, to develop training for each of the On-Site Accessibility Coordinators on poll-site accessibility. The BOE shall contract with CIDNY to develop an Election Day poll-site accessibility checklist to be used by On-Site Accessibility Coordinators on the date of any election.

(a) The BOE shall compensate CIDNY for the services it provides pursuant to this Order at a rate determined by this Court.

(b) This paragraph does not require the BOE to hire any additional staff at its poll sites.

4. The BOE's On-Site Accessibility Coordinators shall document any accessibility complaints received on the date of any election. Plaintiffs shall provide forms for this documentation to the BOE. The BOE shall submit a report detailing accessibility complaints received by On-Site Accessibility Coordinators to Plaintiffs within 45 days of any primary, special, or general election held during the term of this Order, with the exception of Primary Elections occurring in September. For Primary Elections occurring in September, the BOE shall

provide reports detailing accessibility complaints for a sample
35 randomly selected poll-sites within 45 days of such primary
elections. The parties shall communicate in writing regarding
which sites shall be sampled at least 30 days prior to each
September Primary Election.

   5. This matter is referred to Magistrate Judge Henry B.
Pitman, who is designated by this Court to oversee the
implementation of this Order, including _inter alia_ any and all
disputes among the parties concerning payments, selection of
Third Party Experts, and the poll-site surveys to be conducted
pursuant to this Order.

   6. Attachment A to this Order contains a list of poll-sites,
including those with accessibility barriers, which the parties
identified in advance of the hearing on remedies held on
September 10, 2012. Following each Election Day, parties shall
meet and confer, and make a joint submission to Judge Pitman of
an updated version of Attachment A, which shall incorporate:

      (a) any additional barriers at the BOE's poll sites;

      (b) the removal of any poll-sites identified from the
   BOE's list of active poll-sites; and

      (c) the removal of any poll-site barriers from the list
   where the parties agree that such barriers no longer exist
   at the identified poll-site.

4

The BOE shall ensure that the sites identified in the most updated version of Attachment A receive appropriate and sufficient temporary access features (such as portable ramps and sufficient signage) on the day of the election. For the November 6, 2012 General Election, the BOE shall, to the extent possible, ensure that the sites identified in Attachment A receive appropriate and sufficient temporary access features (such as portable ramps and sufficient signage) on that date.

7. Beginning with the November 6, 2012 General Election, and in all primary, special, and general elections held thereafter and during the term of this Order, Assembly District ("AD") Monitors employed by the BOE shall visit each polling site twice on the date of any such election to assess the accessibility of the poll site. The first visit to each site shall occur at least four hours prior to the second, and the AD Monitors shall, during said visits, take immediate steps to assist on-site poll workers to remedy any access barriers at the site, including, but not limited to, missing ramps, missing signage, and paths to voting machines that cannot accommodate persons with disabilities due to insufficient width.

(a) The AD Monitors shall complete CIDNY's poll-site accessibility training prior to November 6, 2012.

(b) Prior to each election held during the term of

this Order, the BOE shall communicate in writing to each AD Monitor visiting a polling site at which the BOE agreed to or was required by Court Order to implement a temporary modification, pursuant to Paragraph 15 of this Order.  The communication shall identify the temporary modifications that are necessary to implement at that site.

(c)  The AD Monitors shall document the results of their visits.  The report shall state whether each temporary modification to which the BOE agreed pursuant to Paragraph 15, or was ordered to implement, was in fact implemented when the AD Monitors arrived at the polling site.  If one or more of the temporary modifications was not implemented when the AD Monitors arrived at the polling site, the AD Monitors' report shall also state:

(1) the time the AD Monitor informed an on-site poll worker of the failure to implement the temporary modification;

(2) the name of the on-site poll worker with whom the AD Monitors spoke regarding the failure to implement the temporary modification; and

(3) whether the temporary modification was implemented before the AD Monitors left the polling site.

6

(d) Within 45 days of the date of any election, Defendants shall submit a report to Plaintiffs detailing:

    (1) all access barriers found by the AD Monitors; and

    (2) any temporary modifications that the BOE failed to implement.

A sample form for this report is attached to this Order as Attachment B.

8. Defendants shall contract with, and provide reasonable compensation to, an independent third-party with expertise in voting accessibility ("Third Party Expert") to conduct poll-site accessibility surveys of the polling sites in New York City. The parties shall attempt to come to an agreement regarding the selection of the Third Party Expert. If the Parties cannot agree on the Third Party Expert by January 10, 2013, however, the parties shall, in writing, brief Judge Pitman as to their respective recommendations for the Third Party Expert. Judge Pitman shall designate the Third Party Expert.

9. The BOE will cooperate fully with the Third Party Expert as it conducts its survey work including, but not limited to, providing the Third Party Expert with assistance in accessing polling sites on non-election days and providing access to

election district maps and other reasonably requested information, including the identification of the voting area at each polling site, in a timely manner.

10. Beginning January 2013, the Third Party Expert will conduct surveys of as many polling sites as practicable, with a goal of no fewer than 120 polling sites every two months (the "Survey Period").

11. The Third Party Expert shall utilize the requirements set forth in the survey instrument, attached hereto as Attachment C, to evaluate polling sites pursuant to Paragraph 10 of this Order. In doing so, the Third Party Expert may utilize an electronic version of the survey instrument or an electronic database that captures the requirements set forth in the survey instrument. In addition, the Third Party Expert will include photographs of relevant features at each polling site to accompany the survey instrument.

12. Within 20 days of the end of each Survey Period, the Third Party Expert shall provide to the BOE and the Plaintiffs, copies of all assessments completed and photographs compiled during the previous Survey Period.

13. Within 30 days of the end of each Survey Period, the Third Party Expert will report to Judge Pitman, the BOE, and the Plaintiffs, *in* writing, with the results of the surveys completed

8

pursuant to Paragraph 10 of this Order and its recommendations regarding polling place locations that are not accessible (the "Report"). Each Report shall state:

(a)  Whether each surveyed polling site can reasonably be modified temporarily to be accessible on the day of any election after November 6, 2012, and, if so,

(i) what temporary modifications can be made, and

(ii) how such modifications can be accomplished;

(b) If the polling site is located in a publicly-owned building, whether it *is* reasonable to modify permanently any accessible polling site to make it accessible and how such modifications would be made; and

(c) Whether a temporary sign should be posted to direct voters with disabilities to an alternate accessible entrance, and where the sign should be posted.

14. If the Report concludes that a surveyed polling site cannot reasonably be modified temporarily, the BOE shall report to the Plaintiff and the Third Party Expert, within 60 days of receipt of the Report, in writing, whether that polling site can be relocated to a building that is accessible or can reasonably be made temporarily accessible, and the specific location(s) it recommends as the relocation site. In determining whether a polling site can reasonably be relocated, the BOE shall consider the following criteria:

9

(a) Whether the proposed relocation site is in the same election division that the polling site serves or an election division adjacent to the election division that the polling site serves;

(b) Whether there are any significant dangers or obstacles that would preclude pedestrians from traveling safely to the proposed location, such as a park or major road or highway that cannot be safely traversed;

(c) Whether the building in which the polling site is proposed to be relocated is of sufficient size to accommodate a polling site or, if a polling site is already located there, whether the building is of sufficient size to accommodate an additional polling site; and

(d) Whether the location is unable to accommodate a polling site for mechanical or other physical or operational reasons.

If the BOE recommends a relocation site that is not accessible but can reasonably be made temporarily accessible, the BOE also will identify what temporary modifications can be made and how such modifications can be made.

15. As set forth under subsections (a) and (b) of this Paragraph, the BOE will implement recommendations made by the Third Party Expert Pursuant to Paragraph 13 of this Order, subject to its ability to challenge the recommendation under

subsection (c) of this Paragraph.

(a) Other than the when excepted pursuant to subsection (c) of this Paragraph, during the term of this Order, the BOE shall implement all recommendations of the Third Party Expert to which it has agreed, beginning in the elections immediately subsequent to their agreement, unless

(i) the BOE's agreement was made within 45 days before the next election; and

(ii) the BOE determines that it is in its best interest to implement the recommendation in the next subsequent election, in which case the recommendation will be implemented in the next subsequent election.

(b) During the term of this Order, other than when excepted pursuant to subsection (c) of this Paragraph, the BOE will, in the next election subsequent to any additional Order issued by the Judge Pitman, implement said Orders, unless the Orders are appealed to this Court.

(c) If the BOE concludes that

(i) it cannot reasonably implement a recommendation;

(ii) relocation of the polling site to an alternate location is a more appropriate response to the recommendation; or

(iii) a polling site cannot be relocated;

11

then the BOE shall notify the Third Party Expert and the Plaintiffs and meet and confer with the Third Party Expert and the Plaintiffs (or their representatives). If the BOE and the Third Party Expert or the Plaintiffs are unable to agree as to the implementation of a recommendation, the BOE may petition the Judge Pitman for relief from the applicable recommendation pursuant to Rule 60 of the Federal Rules of Civil Procedure, subject to appeal. The BOE does not have to implement any recommendation from which it is seeking relief unless and until the Judge Pitman, or if appealed, a Final Order on Appeal, orders the BOE to implement the recommendation.

16. Attached to this Order is a survey instrument, Attachment C, which the BOE shall use to assess the accessibility of all future proposed polling site locations. The BOE shall continue to make accessibility a major criterion when it selects new locations for polling sites. The BOE shall continue its policy and practice of reviewing each newly proposed polling site location to determine whether it is accessible to persons with disabilities or could be made temporarily accessible before selecting a location as a polling site.

17. After the November 6, 2012 General Election, the Third Party Expert shall train employees of the BOE on using the survey

instrument and determining whether a polling site location is or can be made accessible. No later than 60 days before beginning the training, the Third Party Expert shall provide the BOE with a copy of the training materials that the Third Party Expert intends to use, and shall provide the BOE with a list of equipment and/or supplies the BOE inspectors will need to assess accurately the accessibility of the BOE's polling sites. During the term of this Order, the BOE may request additional training on a reasonable basis.

18. If at any time one of the parties desires to petition this Court to modify this Order, the party will promptly notify the other parties in writing, setting forth the facts and circumstances thought to justify modification, as well as the substance of the proposed modification. In such an instance, an in-person meeting between the parties shall be held prior to the petition to attempt resolution without Court intervention. Parties receiving notice of another party's intent to petition for modification of this Order shall notify the requesting party in a timely manner as to whether it will consent to the proposed modification.

19. The Court shall maintain jurisdiction over compliance with this Order through December 31, 2016. 30 days before the expiration of this period, the parties shall submit briefing to

the Court on the BOE's compliance with the Order, and

make recommendations as to whether the Court should

retain jurisdiction over the matter.

SO ORDERED.

Dated: *May 13*   , 2013
New York, New York


                              *Deborah A. Batts*
                              _____
                              THE HONORABLE  DEBORAH A. BATTS
                              UNITED STATES DISTRICT JUDGE